FILED
**United States Court of Appeals**
**Tenth Circuit**

**November 18, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

VICTOR CASTILLO-NAJER,

        Defendant - Appellant.

No. 12-3340
(D.C. No. 2:11-CR-20023-KHV-1)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **GORSUCH**, **ANDERSON**, and **HOLMES**, Circuit Judges.

Victor Castillo-Najer appeals his conviction for aiding in the distribution of more than 100 kilograms of marijuana. He says the district court should've granted his motion for a new trial because there wasn't enough evidence to establish his guilt. This court has explained that a "district court should grant such a motion only in exceptional cases in which the evidence preponderates heavily against the verdict."

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

*United States v. Cesareo-Ayala*, 576 F.3d 1120, 1126 (10th Cir. 2009) (internal quotation marks omitted). We review the district court's denial of a motion for new trial for an abuse of discretion. *Id.* Here we see none.

At the heart of this case lies a credibility contest. At trial the government presented evidence linking Mr. Castillo-Najer to the drug deal; Mr. Castillo-Najer offered an innocent explanation of the facts. In the end, the jury chose to credit the government's account. As the district court observed, the jury's choice was a reasonable if not unassailable one, and it certainly can't be said to labor upstream against the predominant tide of evidence presented at trial.

The government's case went like this. A confidential informant was tasked by Mexican drug smugglers to transport a large shipment of marijuana to Kansas City. The informant tipped off authorities to the shipment and proceeded to work with them to apprehend the intended recipient. The informant told officers that the drugs were to be delivered to "Kiko" in Kansas City. Two undercover detectives, John Hernandez and Octavio Pasillas, then took possession of the marijuana and told the informant to give Kiko their phone number. The informant later notified the detectives that their phone number had been provided to Kiko, and gave the detectives Kiko's phone number (228-215-6217). Soon, the detectives received two calls from 918-530-6172, but they did not answer those calls. Instead, Detective Pasillas called the 228-215-6217 number to arrange a meeting to deliver the drugs. He testified that the person on the phone identified himself as Kiko.

The next day the detectives drove their truck loaded with the drugs to a parking lot by a Lowe's store. When they arrived, Detective Pasillas called Kiko to let him know where they were parked. During the conversation, Kiko asked Detective Pasillas to meet him somewhere else, but Detective Pasillas refused. Several minutes later, a blue Toyota Tundra approached the detectives' truck and Detective Pasillas spoke with the driver. Detective Pasillas testified that the driver (again) asked to move the transfer to a different location, but the detective told the driver "this is the way it's going to have to go, we have to stay here. My orders were to deliver it to you. If you're Kiko, then I'm going to deliver it to you right here, right now." R., Vol. 2 at 304. Detective Pasillas testified that the driver said he was Kiko but drove away.

Soon enough, though, he and Detective Pasillas exchanged a few more phone calls about how the transfer should be made. Ultimately, Kiko advised Detective Pasillas that he would be sending someone else in a grey vehicle to pick up the drugs. And, in fact, within a few minutes a grey minivan arrived and parked next to the detectives' truck. Two men loaded the minivan with garbage bags from the detectives' truck. The bags smelled of marijuana and, at one point, one of the bags opened revealing bricks of marijuana wrapped in cellophane. After the bags were loaded into the minivan, the undercover detectives gave a signal to other detectives in the area — detectives who proceeded to arrest the two men by the minivan and Mr. Castillo-Najer who was found in the blue Toyota Tundra truck in a different

parking lot nearby. At trial, Detective Pasillas identified Mr. Castillo-Najer as the driver of the truck who had said he was Kiko.

In the truck, the detectives found four cell phones and a hand gun. Mr. Castillo-Najer told the detectives that two of the phones were his: numbers 913-752-7552 and 918-530-6172 (the number from which the detectives had received two unanswered calls the day before the transfer). Mr. Castillo-Najer said that the other two phones belonged to his cousin "Primo"; they had numbers 319-462-1046 and 228-215-6217 (the number the informant had provided to the detectives as Kiko's phone number and had been used to coordinate the transfer of the drugs). The government introduced phone records at trial showing calls from 228-215-6217 to the confidential informant's phone and the undercover detectives' phone on the day before and the day of the transfer; and calls from 913-752-7552 and 319-462-1046 to the phone of one of the men who arrived in the minivan to help transfer the drugs, calls made in the minutes leading up to the transfer.

For his part, Mr. Castillo-Najer offered a very different version of events at trial. He testified that Kiko was someone from whom he bought cheap construction supplies to use in his home renovation business. He asserted that three of the four phones belonged to Kiko or Primo and that the only phone belonging to him bore the number 913-752-7552. He said the other phones were given to him by Kiko to help arrange a pick-up of construction materials. He said that he spoke to the detectives on the phones given to him by Kiko but thought the transaction being

- 4 -

arranged was for construction materials, not drugs. On cross-examination, however, Mr. Castillo-Najer was unable to provide information about Kiko's real name, employment information, or whereabouts.

When denying Mr. Castillo-Najer's request for a new trial, the district court observed that on this record "the jury could reasonably have chosen not to believe that the phantom Kiko was responsible for orchestrating the shipment, and rather to conclude that defendant and Kiko were the same individual." R., Vol. 1 at 310-11. We see no basis to disagree with this assessment. Without any, we cannot fault the district court for denying the motion for a new trial. The judgment is affirmed.

Entered for the Court


Neil M. Gorsuch
Circuit Judge